# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Lois E. DeAngelis, | ) | C.A. No. 11646-MA |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| Joseph A. DeAngelis, Jr., and Cynthia L. | ) | |
| DeAngelis, | ) | |
| Respondents. | ) | |

## MASTER'S REPORT

Date Submitted: February 3, 2017
Draft Report:
Final Report: May 16, 2017

Seth L. Thompson, Esquire, of SERGOVIC CARMEAN WEIDMAN MCCARTNEY & OWENS, P.A., Georgetown, Delaware; Attorney for Petitioner

Albert M. Greto, Esquire, R. Joseph Hrubiec, Esquire, of the LAW OFFICES OF ALBERT M. GRETO, Wilmington, Delaware; Attorneys for Respondent

AYVAZIAN, Master

Introduction

A widow is seeking to partition a small parcel of real property located in Millville, Delaware, which she and her husband had purchased with her husband's son and daughter-in-law in March 2006.  The recorded deed reflects that each married couple originally held title to an undivided fifty percent interest in the property as tenants by the entireties.  Following her husband's death in January 2012, the widow filed in the Register of Wills Office in Sussex County an affidavit of jointly held property, showing title of an undivided fifty percent interest in the real property was now in her sole name.  In May 2015, the widow moved to an assisted living facility in New Jersey.  After the widow and her stepson were unable to agree on a price for the widow's interest in the property, she filed this action, which is opposed by her stepson and stepdaughter-in-law.  They deny that the widow has any ownership interest, alleging instead that she had only a life estate in the real property which terminated when she moved out of state in May 2015.  According to the stepson and his wife, title to the real property then passed to the deceased husband's two sons.  The stepson and his wife have filed a counterclaim, seeking the imposition of a resulting trust over the real property for the benefit of the deceased husband's sons.  Pending before me are the parties' motions for summary judgment.  For the reasons that follow, I recommend that the Court approve the partition of the real property and dismiss the counterclaim seeking imposition of a resulting trust.

Factual Background

In 1994, Petitioner Lois DeAngelis (formerly known as Lois McKenna, hereinafter "Lois") married Joseph DeAngelis, Sr. ("Joseph, Sr.") in New Jersey, where they both resided.[1]  A few days before they were married, the couple executed an Ante-Nuptial Agreement.[2]  Paragraph 2.1 of the Agreement defines separate property acquired during the marriage as:

> Any property acquired during the marriage in the name of one party or under circumstances in which it is clear that such property was intended to be acquired separately by one party or where the source of the funds or assets by which such separate property was acquired is premarital assets, shall remain the separate property of the party acquiring such assets, including but not limited to any property into which same is converted, any income or other usufruct thereon, increments, accretions, or increases in value of such assets, whether due to market conditions or the services, skills, or efforts of either party, at any time thereto.[3]

Paragraph 2.3 of the Agreement defines interspousal gifts as:

> Any gift or other gratuitous transfers made by one party to the other during the contemplated marriage shall be treated and deemed the separate property of the donee to the extent that the source of funds or assets used in the acquisition of such property was the separate property of the donor, and shall include but not be limited to any property into which same is converted, any income or other usufruct thereon, increments, accretions, or increases in value of such assets, whether due to market conditions or the services, skills, or efforts of either party, to the extent thereof and governed by paragraph 2.1.[4]

---

[1] I use first names here for the sake of clarity and intend no disrespect by this practice.
[2] Opening Brief in Support of Lois E. DeAngelis' Motion for Summary Judgment, Ex. A.
[3] *Id.*, Ex. A at 3.
[4] *Id.*, Ex. A at 4.

Paragraph 2.4 defines marital property as "[a]ny property acquired during the marriage not deemed to be separate property under Paragraphs 2.1 or 2.2 hereof,[5] shall be treated and deemed to be joint assets acquired during the marriage, except, however, subject to the provisions of Paragraph 2.3."[6]

Paragraph 6.1 of the Agreement provided that upon the death of Joseph, Sr., his widow would receive:

> a life estate in the property located at 5612 Central Avenue, located in the City of Sea Isle, County of Cape May and State of New Jersey, subject to [the widow] being responsible for all expenses of the property, including but not limited to, taxes, sewer, water, insurance, utilities and maintenance and upkeep, and she hereby waives and relinquishes all rights that she may now have or hereafter acquire under present or future laws of any jurisdiction to share in the property of the estate of [Joseph, Sr.] as a result of the marital relationship, including, but not limited to, dower, courtesy, statutory allowances, widow allowances, homestead rights, or rights under N.J.S.A. 3A:35-5 or any other right to take against his last will and testament even if named as a beneficiary therein (unless such last will and testament is executed subsequent to the execution of this agreement), and the right to act as administrator or executor of his estate (unless such right is contained in a last will and testament executed subsequent to the execution hereof).[7]

---

[5] Paragraph 2.2 defines inheritances or gifts from third parties which are not involved in this case. *Id.*, Ex. A at 3-4.

[6] *Id.*, Ex. A at 3.

[7] *Id.,* Ex. A at 7. In Paragraph 6.2 of the Agreement, Joseph Sr. waived his rights to a share in Petitioner's estate as a result of their marital relationship in the event he survived her. *Id.*, Ex. A at 8.

On December 20, 2001, Joseph, Sr. and Lois executed an Ante-Nuptial Agreement Modification, in which they agreed to delete Paragraphs 6.1 and 6.2 and to insert a new Paragraph 6.1 that stated:

> Each party hereto agrees to and accepts the terms and provisions of the Last Wills and Testament each has executed the 20th day of December, 2001. Each party agrees that such Last Wills and Testaments are to be in full force and effect and that such Last Wills and Testaments are not to be changed or modified in any way without the written consent of both parties hereto. In consideration of the above, each party hereto waives and relinquishes his or her right to an elective share or any right or claim he or she may have against the other party's estate other than claims or rights arising out of the Last Wills and Testaments dated December 20, 2001.[8]

On the same date, the couple executed their wills. In his Last Will and Testament, Joseph, Sr., gave his spouse:

> The right to reside in my real property known as 5612 Central Avenue, Sea Isle City, New Jersey, for her lifetime subject to the following provisions.
>
> i. My spouse shall have the right to reside at the property for her life time, provided she pays all bills in a timely manner and resides at such property at least six (6) months per year.
>
> ii. In the event she fails to pay the bills of the residence in a timely manner, or fails to reside at the property for six (6) months a year, then at such time, the life estate shall end and the property shall pass as set forth hereafter.
>
> iii. Upon the death of my spouse, or earlier, in the event she shall fail to satisfy the conditions above, the aforesaid real estate shall pass equally to my children then surviving.[9]

---

[8] *Id.,* Ex. A at JCD 15-16.

[9] Joseph, Sr. was survived by two sons, Respondent Joseph A. DeAngelis, Jr. and Todd C. DeAngelis. *Id.*, Ex. B at 3-4.

The balance of Joseph, Sr.'s residuary estate was to pass equally to his surviving children.[10] Joseph, Sr. also named his spouse as executrix of his estate.[11]

In October 2005, Joseph, Sr. executed an agreement to purchase real property located at 129 Naomi Drive, Millville, Delaware 19967 (hereinafter "129 Naomi Drive") for $480,000.[12] Settlement occurred on March 6, 2006.[13] According to the settlement sheet, 129 Naomi Drive was purchased with a cash deposit of $5,000.00, a loan from Flagstar Bank, FSB in the amount of $384,000.00, which was secured by a mortgage, a second mortgage in the amount of $96,016.16, and a credit from the realtors in the amount of $7,200.00.[14] The borrowers listed on the settlement sheet were Joseph, Sr., Lois, Joseph, Jr., and Cynthia. Each borrower signed the settlement sheet, although Joseph, Jr. signed on behalf of his wife as her power of attorney. The second mortgage was also in the name of these four borrowers, who signed the HUD settlement statement in the same manner.[15]

The deed was prepared by a title company, and named "Joseph A. DeAngelis, Sr., and Lois E. DeAngelis, as to an undivided 50% interest, as Tenants by the Entirety,

---

[10] *Id.*, Ex. B at 4.
[11] *Id.*, Ex. B at 9.
[12] Opening Brief in Support of Respondents Joseph A. DeAngelis, Jr. and Cynthia L. DeAngelis' Motion for Summary Judgment, Ex. C.
[13] *Id.*, Ex. D.
[14] *Id.*
[15] *Id.*

Joseph A. DeAngelis, Jr., and Cynthia L. DeAngelis, as to an undivided 50% interest, as Tenants by the Entirety, of 129 Naomi Drive, Millville, DE 19967, parties of the second part."[16]  The deed was recorded on March 10, 2006, in Deed Book 3280 on page 157.   The two mortgages described the four borrowers as "JOSEPH A DE ANGELIS A Married Man and LOIS E DE ANGELIS A Married Woman and CYNTHIA L DEANGELIS A Married Woman and JOSEPH A DEANGELIS A Married Man, AS JOINT TENANTS."[17]  The borrowers initialed these documents with Joseph, Jr. initialing on behalf of Cynthia as her power of attorney.[18]

After the above purchase agreement was executed but before settlement occurred, Joseph, Sr. allegedly wrote what is now described by Respondents as "the 2006 Letter of Intent."  The 2006 Letter of Intent is typewritten.  It allegedly was signed by Joseph, Sr. on February 6, 2006, but the signature was not witnessed nor notarized.  The letter states:

> To Whom It May Concern:
>
> It is my intention and desire that should I become deceased or unable to communicate effectively, that a portion of the monies from the sale of the property known as 5612 Central Ave, Sea Isle City, New Jersey be used to satisfy the mortgage on the property known as 129 Naomi Drive, Ocean View, Delaware.  The balance of the money less $200,000 is to go to my sons Joseph

---

[16] Opening Brief in Support of Petitioner Lois E. DeAngelis' Motion for Summary Judgment, Ex. D.

[17] *Id.*, Ex. E.

[18] The two mortgages were recorded on March 10, 2006.  *Id.*

A. De Angelis Jr and Todd C. De Angelis. The $200,000 is to be given to my wife Lois De Angelis.

It is also my desire that the property known as 129 Naomi Drive be treated as though it was 5612 Central Ave as depicted in my last will and testament.

This agreement is to be in effect as long as there is a mortgage on the Naomi Drive property or another agreement is made and all parties agree to it.[19]

A mortgage satisfaction piece, dated September 6, 2006, was recorded in the Office of the Recorder of Deeds on October 4th for each of the two mortgages encumbering 129 Naomi Drive.[20] On September 13, 2006, the Delaware Department of Natural Resources and Environmental Control's Division of Water Resources issued a Subaqueous Lands Lease to Joseph, Sr. to repair the dock at 129 Naomi Drive along Whites Creek, which was recorded in the Office of the Recorder of Deeds on September 26, 2006.[21]

On January 17, 2012, Joseph, Sr. passed away. Shortly after their father's death, Joseph, Jr. and his brother Todd met with their stepmother at a restaurant to discuss their father's estate. The discussion was secretly recorded,[22] presumably by one of the

---

[19] Respondents' Answering Brief in Opposition to Petitioner's Motion for Summary Judgment, Ex. G.

[20] Opening Brief in Support of Petitioner Lois E. DeAngelis' Motion for Summary Judgment, Ex. F.

[21] Opening Brief in Support of Respondents Joseph A. DeAngelis, Jr. and Cynthia L. DeAngelis' Motion for Summary Judgment, Ex. F.

[22] Respondents' Answering Brief in Opposition to Petitioner's Motion for Summary Judgment, Ex. H.

brothers. The recording reveals the brothers expressing concern that their father might not have left a will or might have changed his will, and if things were not spelled out, Lois would inherit their father's boats, car trailer, and truck. They also told their stepmother that their father had always wanted them to get 129 Naomi Drive. Lois told the brothers that she did not want the boat or car trailer and did not want to get into a "pissing contest" with them because they would win.[23] Lois also told the brothers that her husband had wanted her to have a place to live and that they would get the house after she moved or passed away. Joseph, Jr. then informed Lois that, according to the deed, she, Joseph, Sr., Joseph, Jr. and his wife were joint tenants with right of survivorship. In the recording, Joseph, Jr. explained to Lois that each of them originally owned 25 percent of the property, and after Joseph, Sr. died, his share was divided among the three surviving owners, so each now owned "33" of the property, and when Lois died, her "33" would be divided between Joseph, Jr. and his wife.[24] Joseph, Jr. also told Lois that he had promised his father that Todd would be taken care of and he intended to keep that promise. Lois was surprised that her husband had never told her how the property was owned. The final portion of their conversation went as follows:

Joseph, Jr.: "It's your house, Lois."
Lois: "Yeah."
Joseph, Jr. "Until, you know, you pass away."

---

[23] *Id.,* Ex. H at 8.
[24] *Id.*, Ex. H at 11.

Lois: "Yeah."

Joseph, Jr. "I would just like to be able to come there with my kids and family and continue to enjoy the --"

Lois: "Yeah --"

Joseph, Jr. "—the shore and--"

Lois: "—that's all right, yeah.  But I don't cook."[25]

On February 27, 2012, Lois filed Joseph, Sr.'s death certificate, Last Will and Testament dated December 20, 2001, an Affidavit of Jointly Held Real Property,[26] and a Small Estate Affidavit in the Sussex County Register of Wills Office.  Lois continued to reside at 129 Naomi Drive until May 2015, when she moved to an assisted living facility in Woodbridge, New Jersey.  Through her attorney in fact, Lois filed a petition for partition on October 28, 2015.[27]  According to a "Decisional Capacity Evaluation" performed on September 27, 2016,[28] Lois was then suffering from severe dementia and lacked sufficient decisional capacity to make relevant decisions.

---

[25] *Id.*, Ex. H. at 12-13.

[26] Opening Brief in Support of Petitioner Lois E. DeAngelis' Motion for Summary Judgment, Ex. H.  Several documents list the address of the real property at issue as 127 Naomi Drive, Ocean View, Sussex County, Delaware 19970.  However, the tax parcel number provided on these documents is identical with the tax parcel number provided on the deed and mortgage documents. *Id.*, Exs. D-F.

[27] Docket Item ("DI") 1.

[28] Opening Brief in Support of Petitioner Lois E. DeAngelis' Motion for Summary Judgment, Ex. I.

Issues

Respondents seek summary judgment on their counterclaim that Joseph, Sr.'s interest in 129 Naomi Drive should pass to his two children in equal shares, and that Lois's interest in this real property should be converted into a resulting trust for the benefit of Joseph, Jr. and Todd. Respondents argue that the 2006 Letter of Intent signed by Joseph, Sr. provides clear and convincing evidence that Joseph, Sr. only intended Lois to have a life estate in 129 Naomi Drive, which ended after she moved to New Jersey in May 2015. As further evidence of their father's intent, Respondents cite Lois's recorded statements following her husband's death. According to Respondents, Joseph, Sr. originally had planned to sell his solely-owned Sea Isle property and use the proceeds from that sale to purchase 129 Naomi Drive. Instead, he had to borrow money in order to purchase the Delaware property, and was told by a Delaware attorney that he would have to put his wife's name on the deed and mortgage. Shortly after he purchased 129 Naomi Drive, Joseph Sr. sold his property in New Jersey and used the proceeds from that sale to satisfy the mortgages on 129 Naomi Drive. Joseph, Sr.'s intent, according to Respondents, was to own 129 Naomi Drive in his sole name, and not to provide Lois with an ownership interest in this property.

Petitioner argues that she is entitled to partition as title owner of an undivided 50 percent interest in 129 Naomi Drive. According to Petitioner, the recorded deed clearly demonstrates that her husband intended to create a tenancy by the entireties

with his wife over an undivided 50 percent interest in 129 Naomi Drive. Respondents have presented no evidence regarding the source of the funds used for the deposit and to satisfy the two mortgages on 129 Naomi Drive, but even if some of her husband's separate funds were used to acquire their interest in the property, those funds were an interspousal gift to her. She is also outraged that her stepsons secretly recorded her conversation while she was in the throes of grief over her husband's recent death. Petitioner argues that the counterclaim should be dismissed on the basis of laches and equitable estoppel since Respondents were on record notice of her interest in the property as of February 13, 2012.

Respondents reply that since neither they nor Lois provided the funds to satisfy the mortgages, logic dictates that Joseph, Sr. supplied those funds. Citing *Hudak v. Procek*,[29] Respondents argue that they have presented sufficient evidence to rebut the presumption that Joseph, Sr., intended to make a gift to Lois of an undivided 50 percent interest in 129 Naomi Drive. Respondents argue that by placing Lois's and their names on the deed and mortgages, Joseph, Sr. intended only to facilitate the initial purchase of 129 Naomi Drive. Once the proceeds from the sale of the Sea Isle property were available, Joseph, Sr. satisfied the mortgages. Respondents point to two other documents relating to this property, i.e., the residential contract for sale executed by

---

[29] *Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002).

Joseph, Sr., and the subaqueous lands lease granted to Joseph, Sr., as evidence that Joseph, Sr. intended to own 129 Naomi Drive in his sole name. Finally, Respondents argue that the defenses of laches and equitable estoppel should not apply because they did not have notice of the Affidavit of Jointly Held Property and, as non-lawyers, they had assumed that the 2006 Letter of Intent was controlling and 129 Naomi Drive would pass to Joseph, Sr.'s two sons in the same manner as the Sea Isle property would have passed to them under Joseph, Sr.'s Last Will and Testament. It was not until Respondents received the partition petition did they become aware that Lois no longer resided in the property and was now claiming an ownership interest in 129 Naomi Drive.

Standard of Review

Both parties have filed motions for summary judgment. However, since none of the parties has argued that a trial is necessary because there is any material issue of disputed fact, I will deem the motions as the equivalent of a stipulation for decision on the merits based on the record submitted with the motions, under Court of Chancery Rule 56(h).

Analysis

Petitioner is seeking the partition sale of 129 Naomi Drive with the net sale proceeds, presumably, to be divided equally between herself, as owner of an undivided

50 percent interest in this property, and Respondents as owners of the other undivided 50 percent interest in this property. Respondents are seeking a resulting trust to be imposed over 129 Naomi Drive in favor of Joseph, Jr. and Todd, the residuary beneficiaries of Joseph, Sr.'s estate and, in their view, the current owners of 129 Naomi Drive now that Petitioner no longer lives there. A resulting trust is an equitable remedy designed to prevent unjust enrichment, and may be imposed in cases where a person supplies the purchase money for property, intending to retain a beneficial interest in the property but, for some reason, places title to the property in the name of another person.[30] Here, Respondents contend that Joseph, Sr. provided the purchase money for 129 Naomi Drive, but title was placed in his name and the names of his wife, son, and daughter-in-law simply because the purchase money was unavailable at the time of settlement. Respondents claim that Joseph, Sr.'s purchase money subsequently became available following the sale of his New Jersey property, when proceeds from that sale were used to satisfy the two mortgages encumbering 129 Naomi Drive nine months after its closing.

Under Delaware law, if the person supplying the purchase money is a parent or a spouse who then places legal title to property in the name of his or her child or spouse, a presumption arises in this familial setting that the parent or spouse intended to make

---

[30] *Id.* at 146.

a gift of the property, and did not intend to retain an ownership interest in the property.[31]

This presumption operates against the donor, i.e., the donor parent or donor spouse, who must produce clear and convincing evidence to rebut the presumption of a gift.[32]

In this case, Joseph, Sr., the donor parent/spouse, is not available to produce such evidence because he is deceased. Moreover, in an unusual twist, the donee child(ren), i.e., Respondents, are at risk of losing their legal title to an undivided 50 percent interest in the property as tenants by the entireties,[33] if they succeed in their quest to deprive the donee spouse, i.e., Petitioner, of her legal title to an undivided 50 percent interest in the property. Nevertheless, Respondents have attached several documents with their motion for summary judgment, and have provided an audio recording of a conversation with Petitioner, which they claim constitute clear and convincing evidence sufficient to rebut the presumption of a gift by Joseph, Sr.

The primary document on which Respondents rely is the 2006 Letter of Intent that they claim was written by Joseph, Sr. Assuming for the sake of argument that this letter is authentic, it is not a testamentary document since it lacks the requisite signatures of two witnesses.[34] Moreover, by its own terms, this "agreement" was to be

---

[31] *Id.*

[32] *Id.* at 147.

[33] The only potential loser, however, would be Cynthia, since Joseph, Jr. would retain an interest in the property if a resulting trust were imposed in favor of Joseph, Jr. and his brother Todd.

[34] 12 *Del. C.* § 202(a) provides:

in effect only as long as there was a mortgage on 129 Naomi Drive or until another agreement was made and all parties agreed to it. There is no evidence of any mortgage secured by 129 Naomi Drive after the original two mortgages were satisfied in October 2006. There is also no evidence of any other agreement made by "all parties," i.e., Joseph, Sr., Lois, Joseph, Jr. and Todd. Therefore, the 2006 Letter of Intent does not provide any support for Respondent's argument. The audio recording contains a statement by Petitioner indicating that she understood she could live in 129 Naomi Drive until she died or she moved away. But it also appears from the recording that Petitioner was unaware that she had an ownership interest until her stepson informed her about the deed following Joseph, Sr.'s death.

Respondents also ignore other facts in this case which support the presumption of a gift. Over 95 percent of the purchase price was borrowed and, in order to finance the purchase of 129 Naomi Drive, Joseph, Sr., Petitioner, and Respondents signed on two mortgages, making all four of them liable for the mortgage debt. Under Delaware law, the actions of Petitioner and Respondents in assuming responsibility for this

---

(a) Every will, whether of personal or real estate, must be:
  (1) In writing and signed by the testator or by some person subscribing the testator's name in the testator's presence and by the testator's express direction; and
  (2) Subject to §1306 of this title, attested and subscribed in testator's presence by 2 or more credible witnesses.

mortgage debt constitute consideration from them to Joseph, Sr.[35]  Furthermore, after

the mortgages were satisfied nine months later, no change was ever made to the title of

129 Naomi Drive.  Joseph, Sr. continued to reside in this property with his wife until

his death approximately six years later.  Had Joseph, Sr. used the proceeds from the

sale of his solely-owned New Jersey property to satisfy the mortgages,[36] and had he

intended his wife to have only a life estate in 129 Naomi Drive, Joseph, Sr. could have

made changes to the deed or in his will, but there is no evidence that he made any such

changes,[37] despite Joseph, Jr.'s repeated attempts to persuade his father to make a

will.[38]

---

[35] *See Hanby v. Hanby*, 245 A.2d 428, 430 (Del. 1968); *Real Estate of Shockley v. Foraker*, 2004 WL 51260, at **3-4 (Del. Ch. Jan. 6, 2004).

[36] There is also no evidence that the New Jersey property was sold, or if it was sold, on what date, at what price, and the disposition of the net sale proceeds.  If the New Jersey property had been sold before Joseph, Sr.'s death, then the specific gift of a life estate in that property in Joseph, Sr.'s Last Will and Testament dated December 20, 2001, would have been adeemed.

[37] The Ante-Nuptial Agreement Modification dated December 20, 2001 would have required Lois's written consent to any subsequent changes to Joseph, Sr.'s will.  Since Lois was never told by her husband that she had an ownership interest in 129 Naomi Drive and she did not understand the deed's language when Joseph, Jr. attempted to explain it to her, it seems unlikely that she would have opposed any proposed changes in her husband's will or the deed as long as she could continue to reside in 129 Naomi Drive.

[38] The recording of the parties' conversation following Joseph, Sr.'s death includes admissions by Joseph, Jr. that he was aware of the four names on the deed, Respondents' Answering Brief in Opposition to Petitioner's Motion for Summary Judgment, Ex. H at 10, and that he frequently tried to persuade his father to make or change his will: "Well, I mean – I mean that's , you  know, I kept – every time I was

Conclusion

For the above reasons, I find that Respondents failed to present clear and convincing evidence to rebut the presumption of a gift to Petitioner and, by the same token, to Respondents. Therefore, I recommend that the Court grant judgment in favor of Petitioner, allowing the partition sale of the property to proceed, and that the Court dismiss Respondents' counterclaim seeking the imposition of a resulting trust.

On May 11, 2017, Petitioner's attorney filed a suggestion of death, indicating that Petitioner passed away on April 24, 2017.[39] As a result, I am waiving a draft report, issuing this decision as a final report, and staying the period for taking exception to a Master's Final Report under Court of Chancery Rule 144 until such time as Petitioner's estate is opened and the real party in interest, i.e., the executor or administrator of Petitioner's estate, is substituted as a party plaintiff.[40]

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

at Dad's, "Would you go get a will? Would you please – would you please go? Please go. Please go," every time he had an illness. "Would you, Dad." *Id.*, Ex. H at 6.
[39] DI 38.
[40] *See* Ch. Ct. R. 17(a).