**IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE**
**IN AND FOR SUSSEX COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| MCKENZEY MAE DEGRACE, | ) | C.A. No. CPU6-18-000500 |
| | ) | |
| Petitioner, | ) | Petitioner's Date of Birth: |
| | ) | September 29, 2015 |
| TO | ) | |
| | ) | |
| MCKENZEY MAE DEGRACE-WARD | ) | |

**Submitted: May 8, 2018**
**Decided: June 20, 2018**

*Cortney Ward, Pro Se, Mother of Petitioner McKenzey Mae DeGrace.*
*Sean M. Lynn, Esq., Attorney for Respondent Joseph A. DeGrace.*

## DECISION ON PETITION FOR NAME CHANGE

On May 8, 2018, the Court held a contested hearing on a Petition to change the minor child McKenzey Mae DeGrace's surname to DeGrace-Ward. At the close of the hearing, the Court reserved decision.

### FACTS AND PROCEDURAL HISTORY

On March 23, 2018, Petitioner McKenzey Mae DeGrace filed this Petition through her natural mother, Cortney Ward, seeking to add Cortney's surname to McKenzey's surname with a hyphen. Notice of the Petition was published in a local periodical and served upon McKenzey's father in accordance with applicable statutes and Court Rules.

McKenzey's natural father, Joseph A. DeGrace, opposes the Petition. The Court heard the following testimony from the parents.

Cortney and Joseph were married January 10, 2014. Prior to the marriage, Cortney's surname was Ward, and during the marriage, Cortney's surname was DeGrace. At all times, Joseph's surname has been DeGrace. McKenzey Mae, Cortney and Joseph's only child, was born during the marriage on September 29, 2015, and given the same surname used by both parents at the time. Cortney and Joseph separated on April 8, 2017, and were divorced on November 22, 2017. Cortney resumed her surname of Ward.

Cortney and Joseph lived together with McKenzey from her birth until their separation, when Cortney and McKenzey moved to Milton, Delaware to live with Cortney's parents, Carl and Cathy Ward. Cortney and McKenzey still reside at that address. Cortney testified that McKenzey has a positive relationship with Carl and Cathy and her extended maternal family.

As of the date of the hearing, custody and placement of McKenzey is governed by an interim custody order entered by Family Court. A final custody hearing is scheduled for July 2018. Under the interim order, Cortney has primary placement of McKenzey, and Joseph has visitation with McKenzey every other weekend from Friday evening until Monday morning, one overnight in the middle of the week, and a dinner visit in the middle of the week. Joseph faithfully sees McKenzey at the appointed times.

The points of dispute at the hearing primarily concerned two topics: (1) Cortney's objections to McKenzey being left alone with certain members of Joseph's family; and (2) an incident at the pharmacy where McKenzey's prescription came to be logged under the surname DeGrace-Ward.

In short, Cortney testified that she objects to McKenzey being left alone with certain members of Joseph's family. Cortney testified to various behaviors she has observed in Joseph's family and the reasons why she believes it would be in McKenzey's best interest that contact with certain members only occur in a supervised setting or public place. No evidence was presented that any member of Joseph's family has ever been convicted of any crime or investigated for any misconduct towards children, and Cortney testified that she is not aware of any such evidence.

Joseph testified that Cortney's allegations concerning his family members are untrue and her characterization of his family as dysfunctional is unfounded.

Cortney and Joseph's testimony regarding the incident at the pharmacy is similarly at odds. Joseph testified that he presented himself at Walgreens on a Friday evening to

check on a prescription for McKenzey and, at that time, the prescription was under the name McKenzey Mae DeGrace. Joseph further testified that on Saturday morning Cortney expressed her displeasure with Joseph attempting to fill McKenzey's prescription without her knowledge to him via text message. When Joseph returned to the pharmacy to pick up the prescription on Monday, Walgreens was initially unable to locate the prescription because the prescription was filled under the name McKenzey Mae DeGrace-Ward.

Cortney testified that the pharmacy changed McKenzey's name in its system from DeGrace to DeGrace-Ward due to an issue with processing the prescription through Cortney's insurance. Joseph questioned the likelihood that the pharmacy would take such an action on its own, implying that Cortney requested that McKenzey's surname be changed in order to interfere with Joseph's attempt to fill the prescription. Cortney denied any involvement in the decision to change McKenzey's surname from DeGrace to DeGrace-Ward in the pharmacy's system.

With regard to what effect changing McKenzey's surname to DeGrace-Ward will have on McKenzey's relationship with her family, Cortney expressed her desire to share her last name with McKenzey and testified that the change would help identify McKenzey with Cortney and the other members of McKenzey's home since April, 2017.

Joseph testified that he believes Cortney has engaged in a course of conduct calculated to alienate McKenzey from Joseph's family, including attempting to limit contact between McKenzey and Joseph's family and allegedly attempting to interfere with Joseph's employment by emailing allegations of abuse to his employer. Joseph characterizes the Petition as an attempted manipulation of McKenzey's identity, essentially to undermine McKenzey's identity as a member of the DeGrace family.

Cortney and Joseph both testified that McKenzey is too young to express a preference regarding her surname.

3

**DISCUSSION**

As an initial matter, Respondent did not raise any issue with the form of the Petition at the hearing, and the Court finds that the Petition for Name Change complies with the statutory requirements of Title 10, Chapter 59 of the Delaware Code and with the requirements of Court of Common Pleas Civil Rule 81.

Until relatively recently, the Court evaluated all petitions to change the name of minor children using ten factors.[1] The factors are used to determine whether granting the petition would be in the best interests of the child.[2] This ten factor determination has been superseded by statute—10 *Del. C.* § 5904(b)—in cases where a parent of a minor seeks to add that parent's surname to the minor's surname "either as an additional name or hyphenated with the minor's previously-existing surname."[3] In such cases, there is a statutory presumption in favor of granting the petition.

A parent opposing such a petition can overcome the presumption by producing clear and convincing evidence that the totality of the factors enumerated in § 5904(b) demonstrate that granting the petition "would cause the minor more harm than benefit[.]"[4] The factors enumerated in § 5904(b) are:

---

[1] *See, e.g.*, *Lavoie v. Boone*, 2016 WL 5400298, at *3 (Del. Super. Sept. 15, 2016) ("In determining whether 'the best interests of the child' would be served by granting the proposed name change, the trial court considered the following factors:
  1. A parent's failure to financially support the child;
  2. A parent's failure to maintain contact with the child;
  3. The length of time that a surname has been used for or by the child;
  4. Misconduct by one of the child's parents;
  5. Whether the surname is different from the surname of the child's custodial parent;
  6. The child's reasonable preference for a surname;
  7. The effect of the change of the child's surname on the preservation and development of the child's relationship with each parent;
  8. The degree of community respect associated with the child's present surname and proposed surname;
  9. The difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed name; and
  10. The identification of the child as a part of the family unit."
(citing *In re Boone*, 2015 WL 9463249, at *2 (Del. Com. Pl. Dec. 21, 2015)).

[2] *Id.*

[3] *House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25787; 81 Del. Laws ch. 141 (2017), http://delcode.delaware.gov/sessionlaws/ga149/chp141.pdf.

[4] Clear and convincing evidence is evidence that "produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions [is] 'highly probable.'" *Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002) (quoting

4

(1) The length of time that a surname has been used for or by the minor.

(2) The minor's reasonable preference for a surname.

(3) The effect of the change of the minor's surname on the preservation and development of the minor's relationship with each parent.

(4) The identification of the minor as a part of the family unit or, if applicable, multiple family units.

The four factors enumerated in § 5904(b) are all but identical to four of the ten "best interests of the child" factors.[5]

The synopsis for the legislation adding subsection (b) to § 5904(b) explained the purpose of the amendment as follows:

> The children of parents who divorce or were never married often share a surname with only one parent, which may lead to confusion or hardship when schools, doctors, or others fail to recognize the child's connection with the parent with whom the child does not share a similar surname. Parents and children in such circumstances have compelling reason to seek to add a second surname to the child's name.[6]

In the instant Petition, Cortney Ward seeks to add her surname to her minor child's surname. Under § 5904(b), there is a presumption in favor of granting the Petition. Therefore, the Court must consider the four factors enumerated in § 5904(b) to determine if Respondent has overcome the presumption by producing clear and convincing evidence that granting the Petition would cause McKenzey more harm than benefit.

With regard to the first factor—the length of time the minor's current surname has been used by or for them—McKenzey has been known by the surname DeGrace since her birth on September 29, 2015.

With regard to the second factor—the minor's reasonable preference for a surname—McKenzey is too young to express a reasonable preference for a surname.

---

Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P., 794 A.2d 1141, 1151 (Del. 2002) (quoting *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002)).

[5] *See House Amendment No. 1 to House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25873 (adding the phrase "or, if applicable, multiple family units" after "The identification of the minor as a part of the family unit").

[6] *House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25787.

With regard to the third factor—the effect of the change of the minor's surname on the preservation and development of the minor's relationship with each parent—Cortney testified that sharing a surname with McKenzey would help preserve their relationship and help develop McKenzey's identification with her mother's family. Joseph testified that granting the name change would further Cortney's alleged effort to alienate McKenzey from her father and his family.

With regard to the fourth factor—the identification of the minor as part of the family units or units—Cortney testified that McKenzey would be more readily identifiable as her daughter if she shared Cortney's surname.

In this case, the child's age renders the first and second factors, essentially, immaterial. The issue is the third and fourth factors, and whether adding Cortney's surname to McKenzey's surname would cause McKenzey more harm than benefit due to damage caused to McKenzey's relationship and identification with her father and his family.

The evidence of benefit to McKenzey consists of the fact that, if the Petition were granted, McKenzey would share a surname with her mother, helping her identify with her mother and her mother's family, including Carl and Cathy Ward with whom McKenzey currently lives. Sharing a surname with the parent and other family members in McKenzey's current primary household clearly benefits McKenzey's relationship and identification with her mother and her mother's family, which was the obvious intent of the General Assembly in adopting the controlling statute.

The evidence of harm to McKenzey consists of Joseph's testimony that Cortney seeks to limit McKenzey's relationship with certain members of Joseph's family for unfounded reasons and, more broadly, seeks to control McKenzey, all of which Joseph characterizes as a course of conduct intended to undermine McKenzey's relationship with his family. What is missing from this evidence is a link between merely adding the

6

surname Ward to McKenzey's surname—without eliminating or replacing DeGrace—and damage to McKenzey's relationship and identification with her father and her father's family. Respondent's has not convinced the Court that Cortney's intention in seeking this name change is part of a plan or pattern to harm or interfere with McKenzey's relationship with her father. The Court finds that Respondent has not presented clear and convincing evidence that granting the proposed name change will cause McKenzey more harm than benefit.

Finally, at the close of the hearing, the Court solicited the parents' preference of name order if it were to order a hyphenated name. Although Cortney had petitioned to change McKenzey's surname to DeGrace-Ward, Joseph stated his preference for Ward-DeGrace, and Cortney indicated that order would be acceptable to her. The Court finds that so ordering the joint surnames would benefit McKenzey to the extent it promotes further harmony between her parents, and it accepts Cortney's concession as an amendment to the Petition.

## CONCLUSION

For the foregoing reasons, the amended Petition to change McKenzey Mae DeGrace's name to McKenzey Mae Ward-DeGrace is **GRANTED.**

**IT IS SO ORDERED.**

_____
Kenneth S. Clark, Jr., Judge