**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone:  (302) 739-4397
Facsimile:  (302) 739-6179

Date Submitted:  March 28, 2022
Date Decided:  March 31, 2022

Lisa A. Schmidt, Esquire
Matthew D. Perri, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Daniel B. Rath, Esquire
Rebecca L. Butcher, Esquire
Jennifer L. Cree, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801

Re:  *Level 4 Yoga, LLC v. CorePower Yoga, LLC, et al.*
C.A. No. 2020-0249-JRS

Dear Counsel:

On March 1, 2022, the Court issued a post-trial Memorandum Opinion

(the "Opinion") in which it determined that Defendants, CorePower Yoga, LLC and

CorePower Yoga Franchising, LLC ("CorePower"), breached an Asset Purchase

Agreement ("APA") with Plaintiff, Level 4 Yoga, LLC, by failing to close on the

acquisition of Level 4's assets as required by the APA.[1]  The Court awarded specific

performance and damages.  CorePower has appealed the Opinion and now moves

---

[1] D.I. 202.

for a stay of the Court's Final Order and Judgment pending appeal (the "Motion").[2]

Level 4 opposes the Motion.[3]

To decide whether a stay pending appeal is appropriate under Court of Chancery Rule 62 and Supreme Court Rule 32, the Court must: (1) make a preliminary assessment of the likelihood of success on the merits of the appeal; (2) assess whether the petitioner will suffer irreparable injury if the stay is not granted; (3) assess whether any other interested party will suffer substantial harm if the stay is granted; and (4) determine whether the public interest will be harmed if the stay is granted.[4] When assessing the likelihood of success on appeal, the court considers whether the appeal raises "a substantial question that is a fair ground for litigation and . . . more deliberative investigation."[5] With that said, the first *Kirpat* factor "cannot be interpreted literally or in a vacuum when analyzing a motion for

---

[2] *See* D.I. 203 (Motion for Stay Pending Appeal); D.I. 208 (Final Order and Judgment); D.I. 212 (Notice of Appeal).

[3] D.I. 209.

[4] *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998).

[5] *Id.* at 358.

stay pending appeal."[6] This is because a "literal reading of the 'likelihood of success on appeal' standard 'would lead most probably to consistent denials of stay motions, despite the immediate threat of substantial irreparable injury to the movant,' because the trial court would be required first to confess error in its ruling before it could issue a stay."[7] "[A] more reasonable approach to this issue is to balance all of the equities involved in the case together."[8] If "the other three factors strongly favor interim relief, then a court may exercise its discretion to reach an equitable resolution by granting a stay. . . ."[9]

As for the preliminary assessment of the merits of the appeal, I note that the lion's share of the Court's post-trial findings were factual, not legal, and thus are entitled to more deferential review on appeal.[10] Nevertheless, the Court did engage in the construction of certain provisions of the APA, the results of which are subject

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002).

to *de novo* appellate review.[11]  For this reason, I am satisfied that the appeal presents a "fair ground" for further review.[12]

More importantly, I am satisfied that CorePower is at risk of suffering irreparable harm if the Motion is not granted.  The Court's decree of specific performance requires that CorePower forthwith pay for and then receive thirty-four (34) yoga studios from Level 4.  This includes assuming the property leases where the studios operate, contracts with vendors supporting the studios and contracts or other arrangements with employees working at the studios.  In the event the appeal is successful, CorePower would have assumed these obligations when it was not legally obliged to do so.  Yet it will be difficult, if not impossible, to unwind those obligations or to determine an amount of damages that would adequately compensate CorePower for having to accept (and integrate) assets and liabilities it was not legally obligated to take on in the first place.

---

[11] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 66 (Del. 1993).

[12] *Kirpat*, 741 A.2d at 358.

On the other hand, no other party will suffer substantial harm if the stay is granted, assuming the Court adheres to the constitutional directive that the Court require the appellant to "give sufficient security."[13] The Court already has awarded Level 4 damages caused by CorePower's refusal to close, as well as pre- and post-judgment interest. Because "sufficient security" "shall ordinarily equal such sum of money [as awarded in the judgment to be stayed] and all costs and damages, *including damages for delay*,"[14] the Court may address the harm to Level 4 caused by the continuation of its role as steward of CorePower's assets during the pendency of the appeal by directing that the supersedeas bond include amounts that will compensate Level 4 for these additional delay damages.[15] I address the amount of the bond below.

---

[13] Del. Const. art. IV, § 24. *See also* Supr. Ct. R 32(c) (restating the constitutional requirement that "sufficient security" be posted when the court grants a stay of execution of a judgment pending appeal); *Wiland v. Wiland*, 549 A.2d 306, 308 (Del. 1998) (holding that the appellant most post sufficient security to justify a stay of execution of a judgment entered against it).

[14] Supr. Ct. R 32(c)(ii) (emphasis added).

[15] CorePower has asked that any security take the form of a cash escrow. Because the parties are unlikely to agree on the parameters of any such escrow, as evidenced by their failure to agree on such parameters thus far, I am satisfied that the more prudent approach

The final *Kirpat* factor— whether the public interest will be harmed if the stay is granted—is not implicated here. This case involves a "dispute between private parties" that does not "invoke significant public policy interests."[16]

As for the amount of the supersedeas bond, Level 4 has presented credible, and essentially unrebutted, evidence that its projected post-judgment delay damages during the pendency of the appeal will amount to $4,852,585. These damages were calculated by Level 4's damages expert, Jeffrey Mordaunt, whom the Court found to be credible, utilizing a damages methodology that the Court has also found to be credible.[17] Those damages, coupled with the amount of the judgment, interest and costs, total $40,459,398. CorePower shall post a conforming supersedeas bond in that amount payable to Level 4. Upon posting of the bond, and approval of the

---

to assure sufficient security is to require CorePower to post a supersedeas bond in the form prescribed in Official Form J of the Supreme Court Rules. *See* Supr. Ct. R 32(c)(iii).

[16] *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 2021 WL 5816820, at *5 (Del. Ch. Dec. 8, 2021).

[17] D.I. 209 (Exs. A & B).

Court, execution upon the Court's Final Order and Judgment shall be stayed pending appeal.[18]

Finally, I note that Level 4 has requested that the Court revisit whether to address the length of the non-compete obligation imposed by the APA as a condition to granting the Motion. Supreme Court Rule 32(a) authorizes the trial court to "impose such terms and conditions [with respect to the stay] as may appear appropriate in the circumstances."[19] The APA requires designated Level 4 principals to refrain from defined competitive activity for two years from the date of certain transaction Closings, as defined in the contract.[20] Because all Closings prescribed in the APA will be further delayed by the appeal, Level 4 requests that the stay be conditioned upon the non-compete running from the date of the Closings, as contemplated by the APA. The Court declined to address this issue in its Final Order

---

[18] "Affirmance of [the] judgment on appeal fixes the liability of the surety on the supersedeas bond." *Levien v. Sinclair Oil Corp.*, 1975 WL 1952, at *5 (Del. Ch. 1975).

[19] Supr. Ct. R 32(a).

[20] JX 149 (APA § 5.6.1).

and Judgment because the issue had not been properly joined for decision.[21]  To avoid "substantial harm" to Level 4, however, it is appropriate to address the "Restrictive Period," as defined by the APA, at least to some extent, by conditioning the stay upon a declaration that the Restrictive Period began to run *no later than* the date of the Court's verdict—March 1, 2022.[22]

In summary, the Motion is GRANTED.  As a condition of the stay pending appeal, CorePower shall post a conforming supersedeas bond payable to Level 4 in the amount of $40,459,398.  As a further condition of the stay pending appeal, the Court declares that the Restrictive Period in the APA began to run no later than the date of the Court's verdict.

**IT IS SO ORDERED.**

> Very truly yours,
>
> */s/ Joseph R. Slights III*

---

[21] D.I. 208 (Final Order and Judgment ¶ 1 b.).

[22] This does not preclude an argument by Level 4 that the Restrictive Period began to run as of the Closings CorePower refused to attend.  That argument may be advanced, if needed, should CorePower attempt to enforce the APA's non-compete following an unsuccessful appeal.