Danielle SAMPSON,[1] Respondent Below, Appellant,

v.

**DIVISION OF FAMILY SERVICES and Court Appointed Special Advocate, Petitioners Below, Appellees.**

No. 337,2004.

Supreme Court of Delaware.

Submitted: Jan. 12, 2005.

Decided: Feb. 25, 2005.

---

**31.** *Id.* at 2354.

**32.** *Id.*

**1.** The Court, *sua sponte,* has assigned pseudonyms to the parties under SUPR. CT. R. 7(d).

Glynis Gibson, Esquire, of Gibson & Nowak, LLP, Dover; Delaware; for Appellant.

Peter S. Feliceangeli and Lorin M. Hochman, Esquires, Department of Justice, Wilmington, Delaware; for Appellee.

Mitchell W. May, Esquire, of Street & Ellis, P.A., Dover, Delaware; Court Appointed Special Advocate.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice.

The respondent-below appellant, Danielle Sampson, appeals from an order of the Family Court terminating her parental rights in her biological child, Samuel L. Sampson. Sampson argues that the statute under which her parental rights were terminated is unconstitutional because it deprived her of her constitutional right to due process. That statute, 13 *Del. C.* § 1103(a)(6), provides in essence that parental rights may be terminated where: (1) a parent's rights over another child have previously been involuntarily terminated, and (2) termination is in the best interests of the child.

We conclude that Section 1103(a)(6) affords sufficient due process. Because the Division of Family Services satisfied the requirements of that statute by clear and convincing evidence, we affirm.

### Facts

The petitioner-below appellee, the Division of Family Services ("DFS"), took temporary custody of Samuel in February 2001, while DFS was investigating a case against Sampson relating to her four older children.[2] On March 22, 2002, the Family Court terminated Sampson's parental rights in those four children. In that proceeding, the Family Court also found that Samuel would be dependent or neglected if he was placed in Sampson's custody, a ruling that this Court affirmed on February 11, 2003.[3] As a result of that ruling, DFS took custody of Samuel.

DFS then offered to provide Sampson with reunification services so that Samuel could be returned to her care, but Sampson refused to work cooperatively with DFS. Consequently, DFS filed a petition to terminate Sampson's parental rights to Samuel. On July 6, 2004, The Family Court terminated Sampson's parental rights after concluding that DFS had proved by clear and convincing evidence that the statutory requirements for termination under 13 *Del C.* § 1103(a)(6) had been satisfied.[4]

### Analysis

Sampson claims that 13 *Del. C.* § 1103(a)(6) violates her right to due process of law[5] because the statute creates a presumption that she is unfit to parent any

---

2. DFS was investigating charges that Sampson's former husband had physically and sexually abused their four children, and that Sampson knew of the abuse but did nothing to stop it. Sampson's husband confessed to abusing Sampson's four older children physically and sexually. The Family Court found that Sampson was aware of that abuse and did nothing to stop it, and that she failed adequately to plan for her children's physical needs or mental and emotional health. *Spence v. Division of Family Services*, C.A. Nos. 217, 2002 & 224, 2002, 2003 WL 329590 (Del. Feb. 11, 2003).

3. *Spence,* 2003 WL 329590. A dependency-neglect hearing is the first step taken by DFS in the process of terminating parental rights. If the Family Court finds that a child is dependent, custody is transferred to the State, and the child is placed in foster care. DFS is then obligated to reunite the family, if possible. If its efforts to reunite the parent(s) and child are unsuccessful, DFS files a petition to terminate parental rights. *Watson v. Division of Family Serv.,* 813 A.2d 1101, 1106 (Del. 2002).

4. The Family Court granted partial summary judgment to DFS on the second statutory ground (the prior involuntary termination of parental rights in another child) after this Court affirmed the order of the Family Court terminating Sampson's parental rights in her four older children. The Family Court then held a hearing and determined that DFS had proved the first statutory element (that termination would be in the child's best interests) by clear and convincing evidence.

5. U.S. CONST. Amend V; DEL. CONST. Art. I, § 9.

child presently or in the future, solely because her parental rights to her older children were previously terminated. Stated differently, Sampson argues that because of the prior termination of her parental rights in her four older children, she was denied the opportunity to prove that she was able to care for Samuel. This Court reviews constitutional claims *de novo*.[6]

Section 1103(a)(6) relevantly provides that "... termination of parental rights ... may be initiated whenever it appears to be in the child's best interest *and* [when] ... the respondent's parental rights over a sibling of the child who is the subject of the petition have been involuntarily terminated in a prior proceeding."[7] DFS must prove each statutory element by clear and convincing evidence.[8]

■ Sampson does not claim any constitutional infirmity in the earlier Family Court termination of her parental rights. That determination is *res judicata* and cannot now be challenged. Instead, Sampson argues that by establishing that prior termination as a basis for terminating her rights to a different child, Section 1103(a)(6) violates procedural due process by denying her the opportunity to show that despite the prior termination, she is fit to continue as Samuel's parent. The short and dispositive answer is that the statute does not deny her that opportunity.

■ In determining whether a statute violates procedural due process, this Court must balance three factors (the "Eldridge factors"): (1) the private interest that will be affected by the official action, (2) the government interest involved, and (3) the risk that there will be an erroneous deprivation of the private interest through the procedures currently used, and the probable value of any additional or substitute safeguards.[9]

■ The first and second Eldridge factors require this Court to consider both the private interest and the government interest at stake. Parents have a fundamental liberty interest in the care and custody of their children.[10] That interest, however, must be balanced against the State's interest in protecting the welfare of minor children who have been placed in State custody because their natural parents are unable to provide adequate care.[11] Both factors are highly significant.

The third Eldridge factor requires us to consider the risk of an erroneous deprivation of rights resulting from the current statutory procedure, and the potential value of any additional or substitute procedures. Sampson claims that the "prior termination" provision of Section 1103(a)(6) precludes a parent from demonstrating his or her ability to care for a child, thereby creating a risk that the parent will be deprived of her parental rights on grounds that are contrary to fact. That argument fails, because by requiring DFS to prove by clear and convincing evidence that termination is in the child's best interests, the current Section 1103(a)(6) procedure permits inquiry into a parent's fitness

---

**6.** *Grace v. State*, 658 A.2d 1011, 1015 (Del. 1995); *Hercules, Inc. v. Leu Trust & Banking (Bah.) Ltd.*, 611 A.2d 476, 481 (Del.1992).

**7.** 13 *Del. C.* § 1103(a)(6) (emphasis added).

**8.** *In re Heller*, 669 A.2d 25, 29 (Del.1995) (quoting *Patricia A.F. v. James R.F.*, 451 A.2d 830 (Del.1982)).

**9.** *In re Burns*, 519 A.2d 638, 645–46 (Del. 1986) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

**10.** *In Re Burns*, 519 A.2d at 645 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

**11.** *In re Hanks*, 553 A.2d 1171, 1177 (Del. 1989).

to rear the particular child whose custody is at issue.[12]

 Specifically, in determining whether termination is in a child's best interests, the Court is mandated to consider: (1) the wishes of the child's parents; (2) the wishes of the child (or the child's custodian); (3) the interaction and interrelationship of the child with his or her parents and other relatives; (4) the child's adjustment to his or her home, school and community; (5) the mental and physical health of all the individuals involved; (6) the past and present compliance by both parents with their rights and responsibilities to their child under 13 *Del. C.* § 701; and (7) evidence of domestic violence.[13]

The Family Court considered these factors, and it found that DFS had proved by clear and convincing evidence that it was in Samuel's best interests for Sampson's parental rights to be terminated. Sampson does not challenge that Family Court finding.

Contrary to Sampson's argument, Section 1103(a)(6) does not foreclose judicial inquiry into her fitness to care for one child solely because her parental rights in her older children had previously been involuntarily terminated. By requiring DFS to prove that termination of parental rights is in the child's best interest, that statute protects against an erroneous deprivation of parental rights.

 In accordance with this Court's holding in *Watson*,[14] Sampson was represented by counsel throughout the dependency and the termination proceedings. Sampson initially was afforded her right to due process at a dependency hearing in the Family Court that resulted in Samuel's temporary placement in the custody of DFS. Thereafter, Sampson was afforded additional due process rights when DFS offered to provide Sampson with reunification services so that Samuel could be returned to her care. Sampson refused to work cooperatively with DFS, however. Finally, at the termination hearing Sampson, again assisted by counsel, was afforded an opportunity to demonstrate why it was not in Samuel's best interest for her parental rights to be terminated.

Sampson's parental rights were terminated not only because her parental rights over her other children had been involuntarily terminated, *but also* because, as a result of her failure to work cooperatively with DFS to be reunified with Samuel, it was also in Samuel's best interest to have her parental rights over him terminated. Despite the fact that Sampson's parental rights over her other children had been terminated involuntarily, Section 1103(a)(6) required DFS *independently* to present proof that termination was in Samuel's best interest. The foregoing procedures dispose of Sampson's claim that the statute denies Sampson's constitutional right to procedural due process.

### Conclusion

For these reasons the judgment of the Family Court is AFFIRMED.

---

**12.** This Court has held that in a termination proceeding, the statutory factors listed in Section 722(a) should be used to determine the best interests of the child. *In re Hanks*, 553 A.2d at 1179; *In re Burns*, 519 A.2d at 644.

**13.** 13 *Del. C.* § 722(a).

**14.** *Watson v. Division of Family Serv., supra,* n. 3.