IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARTIN SCHNELL,[1] | § | |
| | § | No. 17, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN23-05-15TN |
| DEPARTMENT OF SERVICES | § | Petition No. 23-10861 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES, | § | File No. CN22-03505 |
| | § | Petition No. 22-13834 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: November 20, 2024
Decided: January 23, 2025

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Family Court of the State of Delaware. **AFFIRMED.**

George R. Tsakataras, Esq., The Law Office of George R. Tsakataras, P.A., Wilmington, Delaware, *for Appellant Martin Schnell.*

Victoria R. Witherell, Esq., Delaware Department of Justice, Wilmington, Delaware, *for Appellee Department of Services for Children, Youth and their Families.*

Renee D. Duval, Esq., Office of the Child Advocate, Wilmington, Delaware, *for Child, R.S.*

---

[1] The Court previously assigned a pseudonym to Appellant pursuant to Supreme Court Rule 7(d).

**GRIFFITHS**, Justice:

A father challenges a Family Court order terminating his parental rights. DFS took custody of the father's son shortly after birth based on the father's mental health diagnosis, substance abuse problems, unstable housing, employment status, previous involvement with DFS, history of domestic violence, and failure to plan for the child. After these concerns persisted, DFS moved to be excused from case planning with the father under 13 *Del. C.* § 1103(d), which states that case planning is not required if grounds for termination of parental rights exist. DFS contended that such grounds existed under 13 *Del. C.* § 1103(a)(7), which specifies that termination may be proper if the father had his parental rights as to another child involuntarily terminated in an earlier proceeding.

After the court granted that motion, DFS petitioned the court to terminate the father's parental rights. After a three-day hearing on the petition, the court found by clear and convincing evidence that the father's parental rights as to another child had been involuntarily terminated in an earlier proceeding and that termination was in the best interests of the child. With these findings, the Family Court terminated the father's parental rights.

On appeal, the father argues that Section 1103(d) is unconstitutional. We conclude that Section 1103(d) is not unconstitutional as applied to the father; the court's analysis under Sections 1103(a)(7) and 1103(d) is supported by the record;

2

and termination of the father's parental rights was in the best interests of the child. We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellant Martin Schnell ("Father") has four biological children according to Appellee Department of Services for Children, Youth and their Families ("DFS").[3] All four children live with their maternal grandmother in Colorado.[4] The Colorado Family Court previously removed the three older children from the care of Father and their biological mother ("Mother").[5] That court also terminated Father's and Mother's parental rights in the two oldest children.[6] A Termination of Parental Rights proceeding as to the third-oldest child was ongoing in Colorado during the pendency of this Delaware action.[7] The Delaware action focuses on Father's fourth, and youngest, child—R.S.

R.S. was born in Delaware on July 11, 2022.[8] DFS took custody of R.S. two days after his birth, finding it was not in his best interests to go home with his parents

---

[2] Because neither party disputes the Family Court's factual recitation, the facts are drawn from the Family Court Order. *See* Ex. 1 to Opening Br. [hereinafter *Family Court Order*]. Additionally, although the facts contain references to both Mother and Father, this appeal relates only to Father.

[3] *Family Court Order* at 2.

[4] *Id.* at 9.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 1–2.

due to their substance abuse and mental health problems.[9]  DFS was also concerned about their unstable housing and lack of infant supplies.[10]  DFS also knew that the parents had lost custody of three children to the State of Colorado and had absconded from Colorado to Delaware with one of the children.[11]  With the risk of flight from Delaware a possibility, DFS placed R.S. in a undisclosed foster home.[12]

Within two weeks, the Family Court held a Preliminary Protective Hearing.[13] At the hearing, the Family Court found that R.S. was dependent and/or neglected, citing:  Mother's and Father's open and incomplete case plans in Colorado; Mother's marijuana use while pregnant; opiate use; domestic violence concerns; and each parent's mental health challenges.[14]  The following month, the Family Court held an Adjudicatory Hearing.[15]  There, the Family Court found that R.S. was dependent and/or neglected and that R.S. would remain in the custody of DFS.[16]

During the pendency of the case, the Family Court convened regular hearings to review Father's progress because of DFS's ongoing concerns about his fitness for

---

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 3.

[13] *Id.*

[14] *Id.*  The Family Court found R.S. was dependent and/or neglected within the meaning of 10 *Del. C.* § 901(8).  *Id.*

[15] *Id.*

[16] *Id.*

parenthood.[17]  Specifically, DFS had concerns about Father's and Mother's mental

health and that their mental health provider was Father's sister.[18]  Another concern

involved the termination of Father's and Mother's parental rights in their two eldest

children.[19]  Colorado had also taken custody of their third eldest, whose case was

proceeding in Colorado at the same time as this Delaware action.[20]

On September 14, 2022, DFS filed a Motion for Grounds to be Excused from

Case Planning (the "Motion").[21]  In the Motion, DFS contended that, under 13 *Del.*

*C.* §§ 1103(a)(7) and 1103(d), it did not have to use reasonable efforts to reunite

Father with R.S.[22]  Two weeks later, the Family Court granted the Motion, finding

that DFS proved by clear and convincing evidence that Father had his parental rights

in another child involuntarily terminated in an earlier proceeding.[23]  With this

---

[17] *See generally Family Court Order* (discussing the Family Court's previous hearings, findings, and orders).

[18] *Id.* at 4.  Father had been diagnosed with intermittent explosive disorder and Mother had been diagnosed with borderline personality disorder.  *Id.*

[19] *Id.* at 3–4.

[20] *Id.*

[21] *Id.* at 4.

[22] *Id.*  DFS also filed the Motion against Mother.  *Id.*  In the meantime, following a Dispositional Hearing on September 15, the Family Court continued R.S.'s custody with DFS, as R.S. remained dependent and/or neglected under 10 *Del. C.* §§ 901(8) and (18).  *Id.*  This decision stemmed from DFS's continued concerns regarding Father's and Mother's mental health challenges, substance abuse problems, unstable housing, employment, previous involvement with DFS, and history of domestic violence.  *Id.* at 4–5.  Additionally, in August 2022, an Expedited Interstate Compact on the Placement of Children was issued—DFS stated that it was working with Colorado DHS to place R.S. in his maternal grandmother's home with his other three siblings.  *Id.* at 5.

[23] *Id.* at 5.  The Family Court made the same finding for Mother.  *Id.*

finding, and under Section 1103(d), the court held that DFS was no longer required to make reasonable efforts to reunite Father with R.S.[24]

In December 2022, the Family Court held a Review Hearing. At the hearing, DFS continued to express concerns about Father's ability to parent.[25] Based on those concerns, the court continued R.S.'s custody with DFS.[26] About three months later, the court held a Permanency Hearing.[27] At its conclusion, the court again continued R.S.'s custody with DFS.[28]

In May 2023, DFS filed a Petition for the Termination and Transfer of Parental Rights against Father (the "Petition").[29] DFS advanced two grounds for terminating Father's parental rights: (1) under 13 *Del. C.* § 1103(a)(5), Father did not plan for R.S.'s physical needs and emotional development; and (2) under 13 *Del. C.* § 1103(a)(7), Father's parental rights in another child had been involuntarily terminated in an earlier proceeding.[30] The court held a hearing on the Petition, spanning three days.[31]

---

[24] *Id.* The Family Court likewise held that DFS was not required to make efforts to reunite Mother with R.S. *Id.*

[25] *Id.* at 6.

[26] *Id.*

[27] *Id.* at 8.

[28] *Id.*

[29] *Id.* at 9. DFS also filed the Petition against Mother. *Id.*

[30] *Id.*

[31] *Id.* at 10.

On December 15, 2023, the court granted the Petition, terminating Father's parental rights.[32] The court found that DFS proved by clear and convincing evidence that statutory grounds for termination of Father's parental rights existed under Section 1103(a)(7) because Father's parental rights to another child had been involuntarily terminated.[33] DFS further proved by clear and convincing evidence that it was in R.S.'s best interests, as defined by 13 *Del. C.* § 722, that the court terminate Father's parental rights.[34]

Father now appeals, arguing that Section 1103(d) is unconstitutional as applied to him in violation of his due process and parenting rights because the court did not use the "least restrictive means" standard to protect R.S. from harm.[35] Father contends that we should adopt this standard, which differs from the one promulgated in the statute. And Father believes that, under the "least restrictive means" standard, he would be allowed to complete a formal case plan for reunification.

## II.    STANDARD OF REVIEW

On appeal of a Family Court order terminating parental rights, "we review both the facts and the law, as well as the trial judge's inferences and deductions."[36]

---

[32] *See id.* at 24 (implementing order). The Family Court also terminated Mother's parental rights. *See id.*

[33] *Id.* at 23.

[34] *Id.* at 24.

[35] Opening Br. at 4, 19, 22.

[36] *Mitchell v. Thayer*, 312 A.3d 693, 698 (Del. 2024).

7

We conduct a limited review of the factual findings "to ensure they are supported by the record and are not clearly erroneous."[37] We review issues of law and legal conclusions *de novo*.[38]

## III.   ANALYSIS

Father's argument on appeal challenges the Family Court's legal conclusions rather than its factual findings.  Based on our review of the record, we conclude that DFS proved, and the Family Court properly found, that Father's parental rights in another child had been involuntarily terminated in an earlier proceeding.  Once it met its burden under Section 1103(d), DFS did not have to provide a case plan, nor was it required to provide Father an opportunity to cure his deficiencies.  Further, we find that Father's contention that our courts must use the "least restrictive means" to protect the interests of the child—a standard adopted by the Florida Supreme Court—is meritless; we follow the United States Supreme Court's decision in *Mathews v. Eldridge* for evaluating Father's due process rights.  Applying *Mathews*, we hold that Father received sufficient process before the Family Court terminated his parental rights, including the Family Court's finding that termination was in the best interests of R.S.

---

[37] *Id.* at 698–99.

[38] *Id.* at 699.

## A. Due Process under *Mathews v. Eldridge* and Delaware Law

It is axiomatic that parents have the right to due process before their parental rights are terminated.[39] The Supreme Court in *Mathews v. Eldridge* set out a three-factor balancing test to determine the appropriate process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the "Government's interest."[40] Neither party disputes the importance of Father's or the State's respective interests. The focus here is on how Section 1103(d) affects the risk of erroneous termination and the probable value of reunification efforts.[41]

Section 1103(d) provides that DFS "is not required to perform reunification or related services" if a specific ground for termination exists, including when it proves "by clear and convincing evidence" that the "parental rights over another child have been involuntarily terminated" under Section 1103(a)(7).[42] If a court finds that the grounds for termination are supported by clear and convincing evidence, a court must then weigh the factors in Section 722 to determine whether

---

[39] *Sierra v. Dep't of Servs. for Child., Youth & their Fams.*, 238 A.3d 142, 153 (Del. 2020).

[40] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[41] *Sierra*, 238 A.3d at 153 ("In cases like this—when both the private and governmental interests at stake are significant—the second factor is 'pivotal.'").

[42] 13 *Del. C.* §§1103(d), 1103(a)(7); *see also* 42 U.S.C. § 671(a)(15)(D)(iii) (federal analogue).

9

terminating parental rights is in the best interests of the child.[43] That determination

must also be supported by clear and convincing evidence.[44]

By requiring DFS to prove by clear and convincing evidence that termination

is in the child's best interests, it permits the court to inquire into a "parent's fitness

to rear the particular child whose custody is at issue."[45] Thus, a determination that

a parent has had his or her rights over another child involuntarily terminated in an

earlier proceeding does not *per se* command a court to terminate the parent's rights

over the child and potentially risk erroneous termination. Instead, "[b]y requiring

DFS to prove that termination of parental rights is in the child's best interest[s], that

statute protects against an erroneous deprivation of parental rights."[46]

---

[43] 13 *Del. C.* § 722(a) ("(1) The wishes of the child's parent or parents as to such child's custody and residential arrangements; (2) The wishes of the child as to such child's custodian or custodians and residential arrangements; (3) The interaction and interrelationship of the child with such child's parent, grandparents, [and other relatives]. . . ; (4) The child's adjustment to such child's home, school and community; (5) The mental and physical health of all individuals involved; (6) Past and present compliance by both parents with their rights and responsibilities to their child . . . ; (7) Evidence of domestic violence . . . ; and (8) The criminal history of any party . . . .").

[44] *Powell v. Dep't of Servs. for Child., Youth & their Fams.*, 963 A.2d 724, 731 (Del. 2008).

[45] *Brock v. Dep't of Servs. for Child., Youth, & Their Fams.*, 272 A.3d 781, 789 (Del. 2022) (quoting *Sampson v. Div. of Fam. Servs.*, 868 A.2d 832, 835–36 (Del. 2005)).

[46] *Id.* (quoting *Sampson*, 868 A.2d at 836); *see also In re Hanks*, 553 A.2d 1171, 1178 (Del. 1989) ("The State protects the parent's interest by requiring a showing, by clear and convincing evidence, that the parent is unable to meet the statute's guidelines before parental rights will be terminated. In addition, judicial decisions clearly indicate that termination, to be lawful, must be in the child's best interests." (internal citations omitted)).

## B.     The Constitutionality of 13 *Del. C.* § 1103(d)

Father contends that Section 1103(d) is unconstitutional as applied to him[47] and that DFS's failure to provide a formal case plan deprived him of an opportunity to prove that he was a fit parent.[48]

"We presume statutes are constitutional unless there is clear and convincing evidence of unconstitutionality."[49]  A challenge to the constitutionality of a statute can take two forms: facial or as applied.  A statute is facially unconstitutional when "the statute cannot be valid under any set of circumstances."[50]  A statute is unconstitutional as applied when the statute "is not valid in the particular circumstances of the case."[51]  Clear and convincing evidence is more than a

---

[47] Opening Br. at 19.

[48] *Id.* at 21–22.

[49] *Sierra*, 238 A.3d at 155–56.  This Court has ruled in recent years that 13 *Del. C.* § 1103(d) is not facially unconstitutional.  *See id.* at 157 ("We are not persuaded that, given the severity of the grounds for termination, and the option to case plan in any given case, excusing the requirement to pursue reasonable efforts when the State has proven serious physical abuse of a child creates an impermissible risk of erroneous termination in every possible case.").  After this Court's decision in *Sierra*, the Delaware General Assembly amended the statute to require DFS to prove by "clear and convincing evidence" that grounds for termination exist.  *Compare* 13 *Del. C.* § 1103(d) (2021) ("[DFS] is not required to perform reunification or related services under Chapter 90 of Title 29 when the Court finds by *clear and convincing evidence* that a ground for termination of a parent's rights exists under paragraphs (a)(2), (4), (7), (8), or (9) of this section.  Notwithstanding the Court's finding, [DFS] may elect, in its sole discretion, to perform reunification or related services under Chapter 90 of Title 29." (emphasis added)), *with* 13 *Del. C.* § 1103(d) (2009) ("[DFS] is not required to perform, but is not prohibited from performing, reunification and related services as outlined in Chapter 90 of Title 29 when the grounds for termination of parental rights are those stated in paragraph (a)(2), (4), (6), (7) or (8) of this section.").

[50] *Sierra*, 238 A.3d at 156.

[51] *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 956 (Del. 2020).

preponderance of the evidence and requires "evidence that produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable."[52]

The record is undisputed—Father had his parental rights involuntarily terminated as to two children in an earlier proceeding.[53] That undisputed fact is clear and convincing evidence that Section 1103(a)(7) is satisfied.[54] When Section 1103(a)(7) is satisfied, Section 1103(d) provides that DFS need not use reasonable efforts for reunification. And that occurred here.

Father's primary basis for arguing that Section 1103(d) is unconstitutional is that it does not use the "least restrictive means" to protect the child, as that term is described in *Padgett v. Department of Health and Rehabilitative Services*—a Florida case that departs from *Mathews v. Eldridge*.[55] In *Sierra v. Department of Services for Children, Youth and their Families*, this Court considered and squarely rejected application of *Padgett* in a similar case, stating that "[w]hile it is not clear to us why *Padgett* departs from the test in *Mathews*, we read *Mathews* and the cases that follow

---

[52] *Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002) (cleaned up).

[53] App. to Opening Br. at A92 (Testimony of Amber Evans, Colorado caseworker); *id.* at A361, A612 (Testimony of Father); *see also Family Court Order* at 3–4 ("Mother and Father have had their rights terminated as to the two eldest[.]").

[54] 13 *Del. C.*§ 1103(a)(7) ("The procedure for termination of parental rights . . . may be initiated when . . . [t]he respondent's parental rights over another child have been involuntarily terminated.")

[55] 577 So.2d 565, 571 (Fla. 1991); *see also* Opening Br. at 22.

it to apply the three-part test when considering due process challenges to terminating parental rights decisions."[56] We therefore decline to follow *Padgett*.

In *Sierra*, this Court held that Section 1103(d) was constitutional, both facially and as applied.[57] There, the parents appealed an order terminating their parental rights after DFS removed a child from the parents' care for unexplained injuries to other siblings and failure to plan for the child.[58] The parents argued that Section 1103(d) was unconstitutional on its face and as applied.[59] After determining that the statute was facially constitutional,[60] this Court concluded that it was not unconstitutional as applied, reasoning that attempts to reunify the family would not have led to a different result because completing a case plan would not have been enough to avoid termination given the injuries to the other child.[61] It thus found that "there was not an impermissible risk of erroneous termination of parental rights."[62]

---

[56] *Sierra*, 238 A.3d at 156 n.66. This Court in *Sierra* explained that *Padgett* "applied strict scrutiny—the least restrictive means test—to termination proceedings[,]" departing from the United States Supreme Court's decision in *Mathews* that Delaware courts follow. *Id.*; *see also id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982) ("[T]he nature of the process due in parental rights termination proceedings turns on a balancing of the 'three distinct factors' specified in *Mathews v. Eldridge*[.]")).

[57] *See generally id.* at 155–57 (discussing the constitutionality of 13 *Del. C.* § 1103(d)).

[58] *Id.* at 147.

[59] *Id.* at 155–57.

[60] *Id.* at 156–57.

[61] *Id.* at 157.

[62] *Id.*

Here, even if we adopted Father's framework from *Padgett*, which we do not, reunification efforts would have been futile. Father argues that, under the least restrictive means framework, he should have been allowed to cure his deficiencies through a case plan before his parental rights could be terminated.[63] But even if DFS had given Father a formal case plan, the outcome would have been no different.[64] Implementing a formal case plan was constrained by Father's mental health, living situation, history of domestic violence, lack of employment, and substance abuse.[65] These are many of the same reasons that caused three other children to be removed from Father's care.[66] Considering the many challenges Father faced, there was no risk of erroneous deprivation from DFS not giving Father a formal case plan, nor probable value to using Father's suggested framework.

## C. The Family Court properly concluded that termination was in R.S.'s best interests under 13 *Del. C.* § 722.

Having shown that statutory grounds existed to terminate Father's parental rights and that "the least restrictive means" is not the proper standard to apply in

---

[63] Opening Br. at 21.

[64] *Sierra*, 238 A.3d at 157 ("[I]t is unlikely . . . that completing a case plan would have been sufficient to avoid termination.").

[65] *See, e.g.*, *Family Court Order* at 4–9 (listing instances throughout action where DFS expressed the enumerated concerns).

[66] *Id.* at 2, 3–4 ("[DFS] indicated upon reviewing records, Mother and Father have three (3) additional children in custody with the State of Colorado due to concerns of serious domestic violence, marijuana usage, and mental health/anger issues."). DFS was also aware of pending child protection matters in Colorado involving Father. *Id.* at 6.

Delaware, we turn briefly to whether the Family Court correctly found, under Section 722, that termination was in the best interests of R.S.[67] The Family Court found that factors three, four, five, six, and eight supported terminating Father's parental rights.[68] The Family Court gave "great weight" to factors three, four, and five.[69] For factor three—the child's interaction with his relatives and others residing in the home—the Family Court found that R.S. "thrives" with the maternal grandmother and other siblings in Colorado.[70] For factor four—the child's adjustment to the home—the Family Court found that R.S. never lived with his Father and that R.S. was being cared for appropriately by his maternal grandmother.[71] For factor five—the mental and physical health of the individuals involved—the Family Court found that Father and Mother have substance abuse and

---

[67] 13 *Del. C.* § 722(a) ("The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including: (1) The wishes of the child's parent or parents as to such child's custody and residential arrangements; (2) The wishes of the child as to such child's custodian or custodians and residential arrangements; (3) The interaction and interrelationship of the child with such child's parent, grandparents, [and other relatives]. . . ; (4) The child's adjustment to such child's home, school and community; (5) The mental and physical health of all individuals involved; (6) Past and present compliance by both parents with their rights and responsibilities to their child . . . ; (7) Evidence of domestic violence . . . ; and (8) The criminal history of any party . . . .").

[68] *Family Court Order* at 16–23. The Family Court concluded that factors one, two, and seven were neutral. *Id.* at 23.

[69] *Id.* at 23.

[70] *Id.* at 16–17.

[71] *Id.* at 17–18.

15

mental health problems, and that maternal grandmother has no physical or mental health concerns.[72]

We see no reason to disturb the Family Court's findings. And Father has not specifically challenged the Family Court's analysis under Section 722. Accordingly, the Family Court properly found that termination was in R.S.'s best interests.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the Family Court's judgment.

---

[72] *Id.* at 18–21.